UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lance Arnold Kingbird,

                    Petitioner,                          Court File No. 19-cv-2760 (NEB/LIB)

        v.
                                                         **REPORT AND RECOMMENDATION**

Vicki Janssen,
Warden Rush City Correctional Facility, Minnesota

                    Respondent.

        This matter comes before the undersigned United States Magistrate Judge pursuant to a

general referral in accordance with the provisions of 28 U.S.C. § 636(b) and Local Rule 72.1, and

upon Petitioner Lance Arnold Kingbird's Petition for Writ of Habeas Corpus, [Docket No. 1].

        For reasons discussed herein, the Court recommends that the Petition for Writ of Habeas

Corpus, [Docket No. 1], be **DENIED** and that this action be **DISMISSED with prejudice.**

I.      **BACKGROUND AND UNDERLYING STATE COURT PROCEEDINGS**

        On October 22, 2019, Petitioner, a Minnesota state correctional facility inmate, filed with

this Court a petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody

challenging the constitutionality of various aspects of his underlying court proceedings. (See, Pet.

[Docket No. 1]).

        The Minnesota Court of Appeals has reported the following details about the events

underlying Petitioner's criminal charges, as well as, his trial and convictions:

                Respondent State of Minnesota charged appellant Lance Arnold Kingbird
        with three counts of first-degree criminal sexual conduct based on allegations that
        he sexually assaulted his 11 year-old daughter, A.L., several times in October 2014.
        A.L. initially reported the abuse to her mother, her mother contacted law
        enforcement, and A.L. gave a videotaped statement to a forensic interviewer at the

Family Advocacy Center of Northern Minnesota. A.L. described three incidents in which Kingbird sexually penetrated her.

At trial, A.L. testified that Kingbird assaulted her three times in October of 2014. She testified that one incident occurred when Kingbird was giving her driving lessons on back roads, told her to stop the car, pulled down her pants, and put his "private part" in her "private parts." A second incident took place on a mattress in the family's living room while A.L.'s mother was sleeping next to her. A.L. testified that she tried to push Kingbird off of her, but that he succeeded in penetrating her. The final incident occurred on the couch in the family's living room while A.L.'s mother was sleeping on a mattress nearby. A.L. testified that on at least one occasion, she had semen on her body. A.L. testified that she did not remember the precise day she told her mother about the assaults, but that it was while her mother and Kingbird were fighting.

During cross-examination, Kingbird questioned A.L. regarding inconsistencies between her trial testimony and the statement she made at the Family Advocacy Center before trial. The state offered the videotape of A.L.'s interview with the forensic interviewer at the Family Advocacy Center as evidence. Kingbird objected, arguing the video was inadmissible because it provided information that was not included in A.L.'s trial testimony. The district court ruled that the video was admissible as a prior consistent statement, except for portions of the video that went beyond the scope of A.L.'s testimony. For example, the district court excluded A.L.'s statements that Kingbird rubbed his penis on her, that she bled from the penetration, that Kingbird stuck his tongue in her mouth, that A.L. was bruised when Kingbird punched her, and that Kingbird digitally penetrated A.L. The district court also excluded A.L.'s description of forced fellatio.

In the video that was received and played for the jury, A.L. told the interviewer that Kingbird touched her breasts and her "private part." She said that Kingbird first penetrated her when he had her bend over a car while they were out for driving lessons in the back woods. She said that it hurt because it was her first time. She said that Kingbird penetrated her on a couch while she was sleeping, that it hurt, and that she tried to push him off. She said that Kingbird penetrated her while she was on a bed near the couch. A.L. said that Kingbird's "private part" emitted a slippery substance, which got on her stomach.

Kingbird called two defense witnesses. One witness worked near the location where Kingbird was driving with A.L. during the first assault. The witness testified that he regularly saw Kingbird driving his car in the area. The second witness supervised Kingbird at the casino where he was employed as a shuttle driver. She testified that Kingbird was working during some of the dates in question, though she did not observe him while he was working and could not verify his location at particular times.

The jury found Kingbird guilty as charged. The district court entered judgment of conviction on all three offenses and sentenced Kingbird to serve a total of 360 months for the three criminal-sexual-conduct convictions. Kingbird appealed, and this court stayed his appeal while he pursued postconviction relief.

In the postconviction proceeding, Kingbird claimed that he received ineffective assistance of counsel at trial because his attorneys failed to call certain

witnesses and failed to present certain evidence in his defense. At the postconviction hearing, Kingbird testified regarding what the witnesses would have said had they testified and what the evidence would have shown had it been offered. Kingbird called his defense attorneys to testify at his postconviction hearing, but they declined to disclose any confidential information. Kingbird presented no evidence to corroborate his testimony. The postconviction court denied Kingbird's petition for relief, and this court reinstated his appeal.

State v. Kingbird, No. A15-2001, 2018 WL 1997342, at *1–2 (Minn. Ct. App. Apr. 30, 2018).

Petitioner was represented by counsel throughout the state court appeal, and Petitioner's appellate counsel argued that: (1) the Minnesota state district court "abused its discretion by admitting A.L.'s recorded statement to the forensic interviewer at the family Advocate Center," and (2) Petitioner "received ineffective assistance of counsel because his lawyer failed to call certain witnesses and to offer important exculpatory evidence, thereby compromising his defense that A.L.'s mother prompted A.L. to fabricate the allegations." Id. at 2, 4; (see also, Ex. 5 [Docket No. 9-3], at 36–63). In addition to the brief filed by appellate counsel with the Minnesota State Court of Appeals, Petitioner filed a pro se supplemental brief, which raised six additional issues and argued that his conviction should be reversed for numerous reasons. See, Kingbird, 2018 WL 1997342, at *6; (see also, Appellant's Pro Se Suppl. Brief [Docket No. 11-2], at 2–55).

In affirming the state district court's decision, the Minnesota State Court of Appeals first considered Petitioner's argument "that the district court abused its discretion by admitting A.L.'s recorded statement." Kingbird, 2018 WL 1997342, at *2–3. The appeals court found that "A.L.'s credibility was central to the case, and it was challenged by [Petitioner] at trial." Id. at *3. A.L.'s "trial testimony and recorded statement were reasonably consistent." Id. "Any inconsistencies and new details in her recorded statement did not directly affect the elements of the charges and were therefore insignificant." Id. And, "the district court carefully omitted those portions of A.L.'s recorded statement that were not consistent with her trial testimony in an effort to avoid prejudice."

Id. Therefore, the Minnesota State Court of Appeals concluded that "the [state] district court did not abuse its discretion in admitting the redacted version of A.L.'s prior recorded statement at trial." Id.

The Minnesota State Court of Appeals next considered Petitioner's argument "that he received ineffective assistance of counsel because his lawyer failed to call certain witnesses and offer important exculpatory evidence thereby compromising his defense that A.L.'s mother prompted A.L. to fabricate the allegations." Id. at *4–6. Regarding Petitioner's failure to call witnesses argument, the appeals court found that "[t]he postconviction court did not err in rejecting [Petitioner's] ineffective-assistance-of-counsel claim for lack of evidentiary support." Id. at *5. The appeals court further noted that "even if [Petitioner] had provided evidentiary support for his allegations regarding the proffered witness testimony, decisions about which witnesses to call are generally not reviewed by appellate courts because they are matters of trial strategy," and the appeals court found that Petitioner "d[id] not establish that his attorney's decisions not to call C.L., D.W., and J.F. [as witnesses] were anything other than unreviewable strategic decisions." Id. Regarding Petitioner's failure to offer exculpatory evidence argument, the appeals court found that Petitioner's lawyer's decision not to offer the specified evidence was reasonable, and it noted that "decisions regarding what evidence to present at trial are strategic and generally not subject to review." Id. at *5–6. The Minnesota State Court of Appeals thus concluded that there was "no basis to reverse the postconviction court's conclusion that [Petitioner] was not entitled to relief on his ineffective-assistance-of-counsel claim." Id. at *6.

Lastly, the Minnesota State Court of Appeals considered the issues raised in Petitioner's pro se brief. Id. It found that "[m]any of these issues [we]re addressed in his primary brief. In fact, most of the arguments in [Petitioner's] pro se brief are attempts to recast his ineffective-assistance-

4

of-counsel claim as erroneous [state] district court rulings and discovery violations by the state." Id. The Minnesota State Court of Appeals observed, "[f]or example, [Petitioner] repeatedly asserts that the [state] district court excluded exculpatory evidence, but he supports the assertions with examples of his attorneys' failure to proffer evidence," and "[Petitioner] asserts that the prosecutor impermissibly failed to disclose exculpatory evidence, but he supports the assertion with examples of evidence known to [Petitioner] and not proffered by his attorneys." Id. at *6 n.1. In addition, the appeals court found that "[t]he vast majority of these arguments are unsupported by the record, and some of the supporting allegations are simply inaccurate." Id. at *6. The Minnesota State Court of Appeals concluded relative to his pro se supplemental brief that "none of [Petitioner's] assignments of error—individually or cumulatively—establishe[d] grounds to reverse his conviction." Id.

On May 30, 2018, Petitioner requested review of the state appellate court decision by the Minnesota Supreme Court. (Appellant's Pet. for Further Review [Docket No. 11-2], at 57–62). Petitioner, through his appellate counsel, argued that: (1) "[t]he District Court erred in admitting the videotape of the victim;" (2) "Petitioner received ineffective assistance of trial counsel;" (3) "Petitioner was denied his Constitutional right to Present Evidence in Support of his defense by trial court rulings;" (4) the "District Court erred when it failed to require the prosecutor to comply with Minnesota Rules of Criminal Procedure 9.01;" (5) the "District Court violated Petitioner's due process rights and right to confront and cross examine witnesses regarding victim's prior sexual behavior;" (6) the "District Court erred when it refused to permit Petitioner to present testimony of certain witnesses;" (7) the "District Court erred in failing to allow Petitioner to make certain statements during closing argument;" and (8) the "[c]ulmulative effect of [the] District

Court['s] errors was not harmless beyond [a] reasonable doubt and deprived Petitioner of a fair trial." (Id. at 58).

On July 17, 2018, the Minnesota Supreme Court denied Petitioner's request for further review. State v. Kingbird, A15-2001, 2018 Minn. LEXIS 392 (Minn. July 17, 2018). Judgement was entered on July 25, 2018. See, Register of Actions, State v. Kingbird, No. 04-CR-14-3347 (Minn. Dist. Ct. filed Oct. 21, 2014); see also, (Pet. [Docket No. 1], at 4).

## II.    KINGBIRD'S PETITION FOR WRIT OF HABEAS CORPUS. [Docket No. 1].

On October 22, 2019, Petitioner filed in this Court his petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody. (Pet. [Docket No. 1]). Petitioner presently asserts three grounds for granting the writ: (1) that Petitioner "received ineffective assistance of counsel during trial in violation of his rights under the 6th Amendment of the United States Constitution;" (2) that Petitioner's "due process rights to present a defense were violated when he was precluded from presenting evidence of the complaining witnesses' prior false sexual allegations and when he was precluded from presenting evidence [that] the complaining witness ha[d] a sexually transmitted disease, and Petitioner did not have that sexually transmitted disease;" and (3) that Petitioner's "right to due process as provided by the Fifth, Sixth, and Fourteenth Amendment to the United States Constitution and his rights as set forth in Brady v. Maryland were violated where the prosecution failed to investigate and turn over exculpatory evidence related to the complaining witnesses' prior false accusations of sexual assault against other males." (Id.).

## III.    Standard of Review

As a threshold matter, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for all § 2254 habeas actions. 28 U.S.C. 2244(d)(1). The one-year period begins on the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

If a habeas petition is timely filed, then "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA establishes that federal courts are to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782–83 (8th Cir. 2007). Moreover, a federal court may not grant relief to a petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a state court decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [U.S. Supreme] Court on a question of law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. See, Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" refers to the holdings, but not the dicta, of United States Supreme Court opinions released

7

prior to the date on which the state court issued its decision. See, Bobadilla v. Carlson, 570 F. Supp. 2d 1098, 1102–03 (D. Minn. 2008), aff'd, 575 F.3d 785 (8th Cir. 2009). An "unreasonable application" of federal law occurs when the state court identifies the correct governing legal rule but then applies it unreasonably to the petitioner's case. See, Williams, 529 U.S. at 408–09. A federal court "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411). The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

Federal district courts may not conduct de novo review of a prisoner's constitutional claims. See, Yarborough v. Alvarado, 541 U.S. 652, 665 (2004). Rather, the AEDPA imposes a highly deferential standard which demands that the state court decisions be given the benefit of the doubt. See, Renico v. Lett, 559 U.S. 766, 773 (2010). When reviewing state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

A federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal

law errors raised by state prisoners. O'Sullivan, 526 U.S. at 844; Duncan v. Henry, 513 U.S. 364, 365–66 (1995) (per curiam); Lundy, 455 U.S. at 518–19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

## IV.   ANALYSIS

As a threshold matter, the Court finds that the present Petition was filed within the one-year statute of limitations established by the AEDPA. The Minnesota Supreme Court denied Petitioner's request for review on July 17, 2018, and judgment was entered on July 25, 2018. State v. Kingbird, A15-2001, 2018 Minn. LEXIS 392 (Minn. July 17, 2018); (Pet. [Docket No. 1], at 4, ¶ 11(b)(1)). Under United States Supreme Court Rule 13.1, "[a] petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review." Therefore, the limitations period began to run on October 23, 2018 (ninety days after judgement was entered on July 25, 2018). See, Sup. Ct. R. 13.1; see also, DiMartino v. Titus, 19-cv-0427 (JRT/SER), 2019 WL 2360900, at *5 n.4 (D. Minn. Apr. 17, 2019), report and recommendation adopted by 2019 WL 2357047 (D. Minn. June 4, 2019). Petitioner filed his present petition for writ of habeas corpus on October 22, 2019, one day within the one-year limitations period under the AEDPA. (See, Pet. [Docket No. 1]).

### A.  Procedurally Defaulted Claims

Respondent argues that Petitioner's claim that his right to due process was "violated where the prosecution failed to turn over exculpatory evidence," asserted as Ground Three in the present Petition, was not exhausted in the Minnesota state courts, and because it may not now be brought before the Minnesota state courts, it is procedurally defaulted. (See, Resp. [Docket No. 9], 1, 7,

12–15). Therefore, Respondent argues that this Court should not consider Ground Three of the Petition on its merits. (See, Id.).

As explained below, this Court finds that Ground Three is indeed procedurally defaulted. Moreover, this Court finds that Ground Two, as well as, two of the three claims asserted in Ground One are also procedurally defaulted.

### i.    Ground One: Ineffective Assistance of Counsel—Claims Two and Three

Petitioner asserts that he "received ineffective assistance of counsel during trial in violation of his rights under the 6th Amendment of the United States Constitution." (Pet. [Docket No. 1], at 4). Petitioner raises three distinct claims for why he received ineffective assistance of trial counsel. First, Petitioner claims that he received ineffective assistance of counsel because at trial he had wanted to call the complaining witnesses' mother," Petitioner's neighbor, and another specified witness in support of his theory "that the complaining witness and her mother had fabricated the allegations against him in retaliation for [Petitioner] allegedly having a girlfriend on the side," but his trial counsel made no attempt to do so. (Id.). Second, Petitioner claims that he received ineffective assistance of counsel because he had wanted to introduce evidence that "the complaining witness had tested positive for an STD" whereas Petitioner "had never had any STD," but his trial counsel did not attempt to use this evidence. (Id. at 4–5). Third, Petitioner claims that he received ineffective assistance of counsel because he had wanted to introduce evidence "that the complaining witness had twice made prior false allegations of sexual assault," but his trial counsel did not seek to use this evidence. (Id. at 4–5).

> A state prisoner must first exhaust state court remedies before seeking federal habeas relief. This gives the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.
>
> To exhaust available state remedies, the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the

claim. Fair presentment requires that prisoner to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue. . . . Further, a federal claim has not been fairly presented to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.

Foster v. Fabian, No. 7-cv-4317 (JRT/JJG), 2009 WL 921063, *3 (D. Minn. March 31, 2009) (citations and quotations omitted); see also, Baldwin v. Reese, 541 U.S. 27, 32 (2004) ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."); Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) ("In order to present a habeas claim to the state court, a prisoner must 'fairly present' not only the facts but also the substance of his federal habeas corpus claim.").

In relevant part, Petitioner stated in his petition for further discretionary review by the Minnesota Supreme Court that one of the issues he sought to be reviewed was that "Petitioner received ineffective assistance of trial counsel," that "[t]he [state] District Court declined postconviction relief," and that "[t]he [state] Court of Appeals Affirmed." (Appellant's Pet. for Further Review [Docket No. 11-2], at 58). Petitioner next stated that the following facts gave rise to his request for discretionary review:

The Court of Appeals' Opinion denying postconviction relief for ineffective assistance of counsel does not analyze or acknowledge the exceptions to the trial-strategy doctrine for review of counsel's performance for sufficiency. The Opinion places Petitioner and other Defendants in a difficult position because here the trial attorney declined in the postconviction hearing to explain at all the basis or decision for failing to call any of the witnesses, particularly C.L. the victim's mother and the party who reported the crime to law enforcement. The Opinion did not cite any authority for the Opinion, other than the often cited language regarding trial strategy being a decision that is not reviewed.

11

(Id. at 60) (emphasis added). Petitioner then argued that his trial counsel's "reliance upon the attorney client privilege as a basis for declining to testify" at his postconviction hearing was improper because by calling his trial counsel "he made a limited waiver of the attorney-client privilege for purposes of deciding that issue," and "the inability of Petitioner to inquire of his [trial counsel] as to the basis for the decision mean[t] that he had no reasonable means of meeting his postconviction burden." (Id. at 61). Lastly, Petitioner stated only generically that he "seeks review of his important constitutional claims raised pro se." (Id.). Petitioner attached both the Minnesota State Court of Appeals decision and the trial court's findings of fact and conclusions of law and memorandum to his petition for further review by the Minnesota Supreme Court, however, Petitioner did not attach any additional specific arguments or requests for relief. (See, Id. at 62).

To satisfy the exhaustion of state court remedies requirement, a prisoner must fairly present all of his federal law claims to the highest available state court before seeking habeas corpus relief in federal court. O'Sullivan, 526 U.S. at 845; Duncan, 513 U.S. at 365–66; McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("[B]efore we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court"). "A petitioner must present both the factual and legal premises of his claims to the state courts in order to exhaust the claims properly." Vang v. Roy, No. 17-cv-71 (JNE/TNL), 2017 WL 4542898, at *4 (D. Minn. Sept. 12, 2017), report and recommendation adopted by 2017 WL 4535918 (D. Minn. Oct. 10, 2017) (quoting Dansby v. Hobbs, 766 F.3d 809, 823 (8th Cir. 2014)); see also, Gray v. Netherland, 518 U.S. 152, 162–63 (1996) ("[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief."). Furthermore, "[t]he Eighth Circuit has stated that a petitioner cannot raise one type of ineffective-

assistance-of-counsel claim in state court and a different ineffective-assistance-of-counsel claim in a federal habeas petition" <u>Vang</u>, at *5 (quoting <u>Burks v. Minnesota</u>, No. 13-cv-823 (JRT/TNL), 2014 WL 7399117, at *8 (D. Minn. Dec. 29, 2014)); <u>see also</u>, <u>Beaulieu v. Minnesota</u>, 583 F.3d 570, 575 (8th Cir. 2009) (quoting <u>Wyldes v. Hundley</u>, 69 F.3d 247, 253 (8th Cir. 1995)) ("Similarly, 'we require habeas petitioners to present to the state courts "the same specific claims of ineffective assistance made out in the habeas petition."'").

Although Petitioner generally presented a claim of ineffective assistance of counsel to the Minnesota Supreme Court, his petition for review did not reference in any way the second or third ineffective assistance of counsel claims now raised for the first time in the instant Petition for Writ of Habeas Corpus before this Court. Indeed, Petitioner did not assert anywhere below that his trial counsel was ineffective for failing to introduce evidence that the complaining witness purportedly tested positive for an STD whereas Petitioner had never had an STD. (<u>See</u>, Appellant's Pet. for Further Review [Docket No. 11-2], at 57–62). Nor did Petitioner assert that his trial counsel was ineffective for failing to introduce evidence of the complaining witness's purported prior false accusations of sexual assault. (<u>Id.</u>).

Petitioner did, through counsel, present his second ineffective assistance of counsel claim, regarding STD evidence, to the Minnesota State Court of Appeals, and the Court of Appeals specifically found that Petitioner was not entitled to relief on that basis. <u>See</u>, <u>Kingbird</u>, 2018 WL 1997342, at 5–6. Likewise, Petitioner did, in his pro se supplemental brief, present his third ineffective assistance of counsel claim, regarding false accusations, to the Minnesota State Court of Appeals, and the Court of Appeals rejected his pro se arguments in total. (<u>See</u>, Appellant's Pro Se Suppl. Brief [Docket No. 11-2], at 21, 24–25, 32–35, 41]; <u>Kingbird</u>, 2018 WL 1997342, at *6.[1]

---

[1] In his pro se supplemental brief, Petitioner framed this claim as erroneous trial court rulings and discovery violations. However, as observed by the Minnesota State Court of Appeals, "most of the arguments in [Petitioner's] pro se brief

13

However, "a state prisoner does not 'fairly present' a claim to a state [high] court if that court must read beyond a petition or a brief (or similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." <u>Baldwin</u>, 541 U.S. at 32; <u>see</u> <u>also</u>, <u>Latimer v. Smith</u>, 351 F. Supp. 3d 1218, 1224 (D. Minn. Aug. 1, 2018) (finding that a claim was not fairly presented to the Minnesota Supreme Court despite a copy of the Minnesota State Court of Appeals' opinion being included with the petition for discretionary review). Nor does a state prisoner fairly present a claim to a state high court by only generally referring to pro se claims raised to a lower court. <u>See</u>, <u>Baldwin</u>, 541 U.S. at 32; <u>Abdullah</u>, 75 F.3d at 411; <u>Foster</u>, 2009 WL 921063, at *3.

Nothing in his petition for further review to the Minnesota Supreme Court fairly indicated that Petitioner was challenging the Minnesota State Court of Appeals' determination that Petitioner's trial counsel was not ineffective for failing to introduce evidence that the complaining witness purportedly tested positive for an STD whereas Petitioner had never had an STD, nor for failing to introduce evidence of the complaining witness' purported prior false accusations of sexual assault. Therefore, Petitioner did not "fairly present" his present second and third ineffective assistance of counsel claims to the highest available Minnesota state court.

> If a petition contains claims that have not been fairly presented, the court must then determine if those claims are unexhausted or procedurally defaulted. A claim is unexhausted if it has not been fairly presented in one complete round of the state's established appellate review process, but the petitioner has the right, under state law, to raise the claim by any available procedure. A constitutional claim is procedurally defaulted if the state prisoner fails to exhaust his state court remedies with respect to that claim and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim.

---

[we]re attempts to recast his ineffective assistance of counsel claim as erroneous district court rulings and discovery violations" which he supports "with examples of his attorneys' failure to proffer evidence." <u>Id.</u> at *6 & n.1.

Foster, 2009 WL 921063, at *3 (citations omitted).

      Petitioner did not, but more importantly he can no longer, fairly present his second and third ineffective assistance of counsel claims to the Minnesota Supreme Court. In State v. Knaffla, the Minnesota Supreme Court held that when an issue is or could have been litigated on direct appeal, it may not be brought in a subsequent, collateral appeal.[2] 243 N.W.2d 737 (Minn. 1976). Here, Petitioner's second and third ineffective assistance of counsel claims were litigated in his direct appeal before the Minnesota State Court of Appeals and could have been fairly (but were not) presented in his petition for further review by the Minnesota Supreme Court. See, Kingbird, 2018 WL 1997342. Therefore, they may not again be raised in any subsequent state appeal. See, Knaffla, 243 N.W.2d at 741. Accordingly, Petitioner's second and third ineffective assistance of counsel claims are procedurally defaulted. See, Id.; see also, Krieger v. Minnesota, No. 13-1942 (JRT/HB), 2015 WL 470811, at *7 (D. Minn. Feb. 4, 2015) ("Crucially, [the petitioner] was aware that these [ineffective assistance of counsel] claims were rejected by the Minnesota State Court of Appeals and failed to reassert them in his Petition for Discretionary Review before the Minnesota Supreme Court. As a result, his claim is procedurally defaulted under the Knaffla rule.").

> If a claim is procedurally defaulted on federal habeas review, a federal court may hear the petition only under two limited circumstances: (1) if the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged violation of federal law; or (2) if the court's failure to consider the claim will result in a fundamental miscarriage of justice.

Kindred v. Titus, No. 17-cv-620 (SRN/HB), 2017 WL 6987990, at *3 (D. Minn. Dec. 27, 2017) (citing McCall v. Benson, 114 F.3d 754, 758 (9th Cir. 1997)), see, also, Coleman v. Thompson,

---

[2] "There are two exceptions to the Knaffla rule: (1) if a novel legal issue is presented, or (2) if the interests of justice require review." Schleicher v. State, 718 N.W.2d 440, 447 (Minn. 2006) (quotations omitted). Neither exception is applicable in this case.

501 U.S. 722, 750 (1991) (setting forth circumstances under which federal habeas review of procedurally defaulted claims is available).

> To establish cause for the default, a petitioner generally must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. To establish prejudice, the petitioner must show that the errors of which he complains worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. A court need not consider prejudice unless the petitioner demonstrates cause.

Kindred, 2017 WL 6987990, at *3 (citations and quotations omitted); accord, Coleman, 501 U.S. at 753. To establish a fundamental miscarriage of justice, a petitioner must "show, based on new evidence, that a constitutional violation has probably resulted in the conviction of one who is actually innocent." Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995); accord, Kindred, 2017 WL 6987990, at *3 (citing McCall, 114 F.3d at 758). "If neither exception applies, the procedural default cannot be excused, and the court should deny the petition without reaching the merits of the claims." Kindred, 2017 WL 6987990, at *3.

Here, Petitioner has not articulated in any way the cause for his procedural default. (See, Pet. [Docket No. 1]; Reply [Docket No. 11]). Since Petitioner has not satisfied the cause component required to overcome the foregoing claims' procedural default, it is unnecessary to address the prejudice component. See, Coleman, 501 U.S. at 753; Kindred, 2017 WL 6987990, at *3. Likewise, Petitioner cannot meet the "fundamental miscarriage of justice" exception because he failed to present any "reliable new evidence" providing clear and convincing proof that he is actually innocent. See, Brownlow, 66 F.3d at 999; Kindred, 2017 WL 6987990, at *3. As such, Petitioner's procedural default of his second and third claims of ineffective assistance of counsel cannot be overcome and this Court is precluded from adjudicating these claims on the merits.

Therefore, the Court recommends that Petitioner's second and third ineffective assistance of counsel claims asserted in Ground One of the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that they be **dismissed with prejudice**.[3]

### ii.    Ground Two: Due Process Right to Present a Defense

Here, Petitioner asserts that his "due process rights to present a defense were violated when he was precluded from presenting evidence of the complaining witnesses' prior false sexual allegations and when he was precluded from presenting evidence the complaining witness has a sexually transmitted disease, and Petitioner did not have that sexually transmitted disease." (Pet. [Docket No. 1], at 6).

In relevant part, Petitioner merely stated in his petition for further review by the Minnesota Supreme Court that "Petitioner was denied his Constitutional right to Present Evidence in Support of his defense by trial court rulings" and that "[state] District Court violated Petitioner's due process rights and right to confront and cross examine witnesses regarding victim's prior sexual behavior." (Appellant's Pet. for Further Review [Docket No. 11-2], at 58). Petitioner did not provide the Minnesota Supreme Court with any further specific elaboration in support of these assertions.

As set forth above, to satisfy the exhaustion of state court remedies requirement, a prisoner must fairly present <u>all</u> of his federal law claims to the <u>highest available state court</u> before seeking habeas corpus relief in federal court. <u>O'Sullivan</u>, 526 U.S. at 845; <u>Duncan</u>, 513 U.S. at 365–66; <u>McCall</u>, 114 F.3d at 757. "A petitioner must present both the factual and legal premises of his claims to the state courts in order to exhaust the claims properly." <u>Vang</u>, 2017 WL 4542898, at *4 (quoting <u>Dansby</u>, 766 F.3d at 823).

---

[3] <u>See</u>, <u>Bush v. Smith</u>, No. 17-cv-3129 (WMW/SER), 2018 WL 542693, *1-2 (D. Minn. Jan. 24, 2018) (dismissing with prejudice habeas claims which were procedurally defaulted).

CASE 0:19-cv-02760-NEB-LIB    Doc. 12    Filed 07/27/20    Page 18 of 28

Here, Petitioner did not fairly present the factual basis of his claim to the Minnesota Supreme Court. Petitioner did not identify any specific trial court ruling that he contends denied him the right to present evidence or to confront or cross-examine witnesses. (See, Appellant's Pet. for Further Review [Docket No. 11-2], at 57–62). Petitioner did not even identify any specific evidence that he was purportedly denied the right to present or any specific the witness that he was purportedly denied the right to confront and cross examine. (See, Id.). Moreover, Petitioner did not fairly present the legal premises of his claim to the Minnesota Supreme Court. "[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." Gray, 518 U.S. at 163; accord, Turnage v. Fabian, 606 F.3d 933, 936 (8th Cir. 2010). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to '"a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue" in a claim before the state courts.'" McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) (quoting Myre v. State of Iowa, 53 F.3d 199, 200–01 (8th Cir. 1995)); see also, Wyldes, 69 F.3d at 251 ("At a minimum, though, the petitioner during direct appeal must have explicitly referred the state courts to the United States Constitution or federal case law.").

"[P]resenting a claim to the state courts that is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Abdullah, 75 F.3d at 412. In his petition for further review by the Minnesota Supreme Court, Petitioner did not specifically cite to the U.S. Constitution or any federal case law, and "although the Due Process Clause and right to fair trial are federal constitutional provisions, the Minnesota Constitution equally confers due process and fair trial rights." Krieger, 2015 WL 470811, at *7 (citing Minn. Const. art. I). Petitioner's mere broad reference to "his Constitutional Right to Present Evidence" and "due process rights" was

18

insufficient to fairly present the substance of this claim to the Minnesota Supreme Court. See, Id. ("As the Magistrate Judge correctly determined, [the petitioner's] 'mere allusions' to his right to due process and a fair trial did not put the Supreme Court on notice that [the petitioner] was basing this challenge on either the federal Constitution, a federal constitutional case, or a state case raising a pertinent federal constitutional issue, as opposed to comparable and overlapping state constitutional provisions.").

Therefore, Petitioner here did not "fairly present" his claims asserted as Ground Two of the present Petition to the highest available state court.[4] Because Petitioner's claims could have been (but were not) presented to the Minnesota Supreme Court, they may not again be raised in a subsequent state appeal. See, Knaffla, 243 N.W.2d at 741. As a result, Petitioner's claims asserted as Ground Two of the present Petition are procedurally defaulted. See, Id. In addition, Petitioner has not satisfied the cause component to overcome his claims' procedural default, nor can he meet the "fundamental miscarriage of justice" exception. See, Coleman, 501 U.S. at 753; Brownlow, 66 F.3d at 999; Kindred, 2017 WL 6987990, at *3. As such, Petitioner's procedural default cannot be overcome, and this Court is unable to adjudicate these claims as well.

---

[4] Even if Petitioner had fairly presented his claims to the Minnesota Supreme Court, Ground Two would clearly fail on the merits. Here again, Petitioner does not identify any specific trial court ruling that he contends denied him the right to present evidence or to confront or cross-examine witnesses. Petitioner merely asserts that "[a]t trial, Petitioner sought to use evidence . . . and he did not," (Pet. [Docket No. 1]), at 6, and that "[t]o the extent the state district court precluded [Petitioner] from presenting evidence related [to] AL's prior false allegations and her STD, it was unreasonable application of clearly established federal law." (Reply [Docket No. 11], at 30). Moreover, Petitioner in part contradictorily asserts, in Ground One, that "[h]is trial counsel . . . did not seek to use the evidence in [Petitioner's] defense." (Pet. [Docket No. 1], at 5). Accordingly, this Court cannot conclude that the Minnesota State Court of Appeals affirmation of the trial court "was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts." See, 28 U.S.C. § 2254(d); see also, Kingbird, 2018 WL 1997342, at *6 & n.1 ("For example, [Petitioner] repeatedly asserts that the district court excluded exculpatory evidence, but he supports the assertions with examples of his attorneys' failure to proffer evidence.").

Accordingly, the Court recommends that Petitioner's claims asserted as Ground Two of the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that they be **dismissed with prejudice**.

### iii.    Ground Three: Due Process Rights Under <u>Brady v. Maryland</u>

As Ground Three of the present Petition, it is asserted that Petitioner's "right to due process as provided by the Fifth, Sixth, and Fourteenth Amendment to the United States Constitution and his rights as set forth in <u>Brady v. Maryland</u> were violated where the prosecution failed to investigate and turn over exculpatory evidence related to the complaining witnesses' prior false accusations of sexual assault against other males." (Pet. [Docket No. 1], at 8).

Respondent argues that Petitioner's claims asserted as Ground Three in the present Petition were not exhausted in the Minnesota state courts, and because they may not now be timely brought before the Minnesota state courts, they are procedurally defaulted. (<u>See</u>, Resp. [Docket No. 9], 1, 7, 12–15). Petitioner contrarily asserts that "[e]ach of Petitioner's claims has been presented to the state district court and the Minnesota Supreme Court as a federal issue and is therefore exhausted." (Reply [Docket No. 11], at 13). Petitioner next argues that he "made this exact argument as part of his Pro Se Supplemental Brief, submitted to the Minnesota [State] Court of Appeals." (<u>Id.</u> at 14). Petitioner then broadly quotes, in their entirety, the issues sought to be reviewed in his petition for further review by the Minnesota Supreme Court. (<u>Id.</u>).

In his pro se supplemental brief which was filed with the Minnesota State Court of Appeals, Petitioner raised numerous, overlapping arguments for why his conviction should be reversed which included several alleged violations under <u>Brady</u>. (<u>See</u>, Appellant's Pro Se Suppl. Brief [Docket No. 11-2], at 2–55). Nevertheless, it is not necessary for this Court to determine whether any of Petitioner's pro se arguments can be construed as fairly presenting his current <u>Brady</u>

argument to the Minnesota State Court of Appeals because the issue was <u>not</u> presented in any way to the Minnesota Supreme Court.

In relevant part, Petitioner stated in his petition for further review by the Minnesota Supreme Court that one of the issues sought to be reviewed was that the "District Court erred when it failed to require the prosecutor to comply with Minnesota Rules of Criminal Procedure 9.01." (Appellant's Pet. for Further Review [Docket No. 11-2], at 58). Minn. R. Crim. P. 9.01, subd. 1(6) requires a prosecutor to disclose exculpatory information. However, as already noted, "presenting a claim to the state courts that is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." <u>See</u>, <u>Abdullah</u>, 75 F.3d at 412. Petitioner did not make any specific reference in his petition for further review to any <u>federal</u> nature of his claim. (<u>See</u>, Appellant's Pet. for Further Review [Docket No. 11-2], at 57–62). Petitioner did not cite <u>Brady</u> or any other federal case law, and Petitioner did not refer to the U.S. Constitution. (<u>See</u>, <u>Id.</u>). Moreover, Petitioner did not even assert that the prosecutor failed to turn over exculpatory evidence. (<u>See</u>, <u>Id.</u>). Indeed, Petitioner did not provide any factual basis for his generally asserted claim that the state district court failed to require the prosecutor to comply with Minn. R. Crim. P. 9.01. (<u>See</u>, <u>Id.</u>).

Therefore, Petitioner did not "fairly present" his claims asserted as Ground Three of the present Petition to the highest available state court. Because Petitioner's claims could have been (but were not) presented to the Minnesota Supreme Court, they may not again be timely raised in any subsequent state appeal. <u>See</u>, <u>Knaffla</u>, 243 N.W.2d at 741. As a result, Petitioner's claims asserted as Ground Three of the present Petition are procedurally defaulted. <u>See</u>, <u>Id.</u> In addition, Petitioner has not satisfied the cause component to overcome his claims' procedural default, nor can he meet the "fundamental miscarriage of justice" exception. <u>See</u>, <u>Coleman</u>, 501 U.S. at 753;

Brownlow, 66 F.3d at 999; Kindred, 2017 WL 6987990, at *3. As such, Petitioner's procedural default cannot be overcome, and this Court is likewise unable to adjudicate these claims.

Accordingly, the Court recommends that Petitioner's claims asserted as Ground Three of the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that they be **dismissed with prejudice**.

### B.  Ground One: Ineffective Assistance of Counsel—Claim One

As already noted, under Ground One of the present Petition, Petitioner asserts three distinct claims for why he "received ineffective assistance of counsel during trial in violation of his rights under the 6th Amendment of the United States Constitution." (Pet. [Docket No. 1], at 4). The second and third claim have already been addressed above. Petitioner asserts as his first claim that he received ineffective assistance of counsel because at trial he had wanted to call three specified witnesses in support of his theory "that the complaining witness and her mother had fabricated the allegations against him in retaliation for [Petitioner] allegedly having a girlfriend on the side," but his trial counsel made no attempt to do so.[5] (Id.). Specifically, Petitioner wanted to call: (1) C.W., "the complaining witnesses' mother;" (2) D.W., Petitioner's neighbor whom Petitioner contends "had overheard the complaining witness and her mother say they were mad at [Petitioner] because

---

[5] It is not entirely clear whether Petitioner fairly presented this claim to the Minnesota Supreme Court. Petitioner asserted that he "received ineffective assistance of counsel" and, albeit somewhat inartfully, indicated that his assertion was based on his trial counsel's failure to call certain witnesses. (See, Appellant's Pet. for Further Review [Docket No. 11-2], at 58, 60). Petitioner further, again somewhat inartfully, indicated that he was challenging the Minnesota State Court of Appeals application of "the trial-strategy doctrine," and its finding that his trial counsel's decision not to call witnesses was unreviewable trial strategy. (See, Id. at 60). However, Petitioner does not explicitly refer to or cite the U.S. Constitution or any federal case law. (See, Id. at 57–62). Considering the fact that the issue of fair presentment does not alter the result of this action, as well as, the fact that that Respondent does not argue that this claim was not fairly presented, out of an excess of caution the Court will consider this claim on the merits. See, Barret v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated."); see also, Rucker v. Miles, No. 18-cv-1153 (ECT/DTS), 2019 WL 1332907, *3 & n.3 (D. Minn. Jan. 31, 2019) (deciding an ineffective assistance of counsel claim on the merits despite it not being "entirely clear" if the claim was fairly presented where the petition for review by the state court asserted "ineffective assistance of counsel" without providing federal authority the fair presentment issue did not change the result of the action).

they suspected he was spending time with another woman;" and (3) J.F., whom Petitioner contends "had received a message from the complaining witness stating she had been pressured to make up allegations against [Petitioner] by her mother." (Id.).

"The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions. The right to counsel is the right to effective assistance of counsel." Missouri v. Frye, 566 U.S. 134, 138 (2012) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984)). "To establish ineffective assistance of counsel, a petitioner must show both that (1) his counsel's performance was deficient, or that it 'fell below an objective standard of reasonableness,' and also that (2) 'the deficient performance prejudiced the defense.'" Bahtuoh v. Smith, 855 F.3d 868, 871 (8th Cir. 2017) (quoting Strickland, 466 U.S. at 687–88). "Failure to establish either Strickland prong is fatal to an ineffective-assistance claim." Worthington v. Roper, 631 F.3d 487, 498 (8th Cir. 2011).

"The first prong of Strickland requires a showing that counsel's performance fell below an objective standard of reasonableness." Id. "Establishing objective unreasonableness is particularly difficult with ineffective assistance of counsel claims. Strickland provides a deferential standard to review such claims by having courts 'apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.'" Bahtuoh, 855 F.3d at 872 (quoting Harrington v. Richter, 562 U.S. 86, 104 (2011)); accord, Lemaster v. Kelly, 750 Fed. App'x 499, 501 (8th Cir. 2018)). The second prong of Strickland requires a showing of prejudice. Bahtuoh, 855 F.3d at 871. "The prejudice prong of Strickland is only met where there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Taylor v. Kelley, 825 F.3d 466, 470 (8th Cir. 2016) (quoting

Strickland, at 694). "For there to be a reasonable probability that the result would have been different, '[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Id. (quoting Harrington, 562 U.S. at 104). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694).

> A federal court may grant relief under 28 U.S.C. § 2254(d)'s "unreasonable application" clause if a state court has unreasonably applied the governing legal principle to the facts of the case. The state court's decision must be "more than incorrect or erroneous"—it "must be objectively unreasonable." A decision is not objectively unreasonable if "fairminded jurists could disagree" as to its correctness.

Bahtuoh, 855 F.3d at 871 (citations omitted). Therefore, "[u]nder § 2254(d), 'the pivotal question is whether the state court's application of the Strickland standard was unreasonable.'" Taylor, 825 F.3d at 470 (quoting Harrington, 562 U.S. at 101); see also, Bahtuoh, 855 F.3d at 872 (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)) ("Our review of the Minnesota Supreme Court's application of Strickland's deficiency element to [the petitioner's] appeal 'is thus doubly deferential,' requiring a 'highly deferential look at counsel's performance through the deferential lens of § 2254(d).'").

Here, the Minnesota State Court of Appeals applied the Strickland standard and found that Petitioner failed to meet his burden of establishing his trial counsel's performance fell below an objective standard of reasonableness. See, Kingbird, 2018 WL 1997342, at *4–5. The Minnesota State Court of Appeals first noted that the only evidence of what the uncalled trial witnesses might have said that was presented to the postconviction court was Petitioner's own testimony, and the Court of Appeals then concluded that "[t]he postconviction court did not err in rejecting [Petitioner's] ineffective-assistance-of-counsel claim for lack of evidentiary support." Id. The Minnesota State Court of Appeals further found that "even if [Petitioner] had provided evidentiary

24

support for his allegations regarding the proffered witness testimony, decisions about which witnesses to call are generally not reviewed by appellate courts because they are matters of trial strategy" and Petitioner "d[id] not establish that his [trial] attorneys' decisions not to call C.L., D.W., and J.F. were anything other than unreviewable strategic decisions." Id. at *5.

As such, the Minnesota State Court of Appeals identified and applied the correct federal standard. The only question remaining now is whether the Minnesota Court of Appeals' determination that Petitioner failed to meet his burden of establishing his trial counsel's performance fell below an objective standard of reasonableness involved an unreasonable application of clearly established federal law. See, e.g., Taylor, 825 F.3d at 470.

Petitioner now argues that his trial counsel's decision not to call the three specified witnesses was objectively unreasonable because Petitioner's trial counsel did not conduct an adequate investigation before making that decision. (See, Reply [Docket No. 11], at 17–20). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. However, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." Forrest v. Steele, 764 F.3d 848, 859 (8th Cir. 2014) (quoting Rompilla v. Beard, 545 U.S. 374, 383 (2005)). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. "[P]rovided that counsel has adequately investigated the 'law and facts relevant to plausible options,' a decision not 'to call [a] witness[ ] . . . is presumed to be reasonable trial strategy." Lemaster, 750 Fed. App'x at 501–02 (quoting White v. Roper, 416 F.3d 728, 732 (8th Cir. 2005)); see also, Jackson v. United

<u>States</u>, 956 F.3d 1001, 1008 (8th Cir. 2020) (alteration in original) (quoting <u>United States v. Orr</u>, 696 F.3d 944, 955 (8th Cir. 2011)) ("[W]e consistently have affirmed that a defense counsel's decision not to call a witness is a virtually unchallengeable decision of trial strategy.").

Here, Petitioner has not provided any new or specific facts that support his bare, conclusory assertion that his trial counsel failed to conduct an adequate investigation before deciding not to call the three specified witnesses at trial. (<u>See</u>, Reply [Docket No. 11], at 17–20). Petitioner merely asserts generically that "he had brought these issues and this evidence to the attention of his trial attorneys," and, "[b]ased on how his trial progressed, without any of this evidence being presented, it is clear that there [was] no investigation done to follow up on [Petitioner's] requests that exculpatory evidence be obtained." (<u>See</u>, <u>Id.</u>). It is Petitioner's "burden to show that the course defense counsel took is not among the 'countless ways to provide effective assistance' in this case." <u>Forrest</u>, 764 F.3d at 859 (quoting <u>Strickland</u>, 466 U.S. at 689). Petitioner's mere conclusory assertions fail to meet this burden. <u>See, e.g.</u>, <u>Perez v. Symmes</u>, No. 10-424 (MJD/JSM), 2012 WL 928220, at *19 (D. Minn. Feb. 15, 2012), report and recommendation adopted by 2012 WL 928713 (D. Minn. Mar. 19, 2012) ("A conclusory allegation that counsel's failure to utilize available evidence is insufficient to demonstrate that counsel was ineffective of that [the petitioner] was prejudiced."). Accordingly, the Minnesota State Court of Appeals' application of the <u>Strickland</u> standard was not unreasonable, and this Court may not grant relief under 28 U.S.C. § 2254(d).

Therefore, the Court recommends that Petitioner's first ineffective assistance of counsel claims asserted in Ground One of the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that it be **dismissed with prejudice**.

## V.    CERTIFICATE OF APPEALABILITY

Only one further issue merits discussion: A habeas corpus petitioner seeking relief pursuant to § 2254 cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability (hereinafter "COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants further appellate review. It is therefore recommended that Petitioner not be granted a COA in this matter. See, e.g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

## VI.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The Petition for a Writ of Habeas Corpus, [Docket No. 1], be **DENIED**;

2. This action be **DISMISSED with prejudice**; and

3. No Certificate of Appealability be issued.


Dated: July 27, 2020                                  s/Leo I. Brisbois
                                                      Leo I. Brisbois
                                                      U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).